Wilson, J.
In order that there may be a full understanding of the issue presented for determination in this cause, it is proper to give a somewhat detailed statement of facts.
*50 On the /30th day of July, 1892, the Mosler Safe Company brought suit in the district court of Arapahoe county against the Security Abstract & Rating Company to recover $100 and interest. In aid of the suit a writ of attachment was issued and levied on certain property conceded to belong to the defendant in that action. The facts of the levy and return will be exactly stated. The property in controversy consisted of certain abstract boohs known as “ records,” lettered from A to M consecutively, excepting the letters J and K ; eight books known as “rating ledgers,” numbered from L to V, G, I and L ; nine books, known as “ lot indices,” numbered from 1 to 9 inclusive; a land index No. 1, “tax sale book,” and two judgment record books. When the attachment writ came into the hands of the then sheriff, it is shown that he went to the office of the company and took possession of all this property, locking the door and remaining in possession of the office. The levy was exact and sufficient to reduce the property to the custody of the officer and fix the attachment lien, providing all other things were properly done by the sheriff to establish and perfect a lien. After the execution of the writ, and while the property was in the sheriff’s possession, the Security Abstract & Rating Company gave a bond in compliance, and in accordance with the terms of sections 111 and 112 of the code. Thereupon the officer made return that he had duly executed the writ by delivering it, leaving a copy with the manager and levying on all the books and office furniture of the defendant at 830 Seventeenth street in the city of Denver, Arapahoe county, Colorado, which were released on the same day and date by the giving of an undertaking as required by law. Thereafter this levy and the execution of this bond, the safe company proceeded with its suit, and on the 5th of November, 1896, obtained judgment against the Security Abstract & Rating Company for $512, and on the judgment the attachment issued was sustained. Thereupon a special execution was issued from the district court of Arapahoe county wherein the judgment was rendered, and delivered to the sheriff, defendant herein, *51 The writ commanded him to proceed to sell the property levied on in the attachment to satisfy the judgment. In obedience to the commands of the writ, the sheriff proceeded to the office of the plaintiff in this action, Nichols, and seized the property covered by the execution. Nichols then brought replevin against the officer to recover possession.
The facts on which the plaintiff’s title rests are these. After the property had been levied on and released by the execution of the statutory bond, and on the 8d day of January, 1894, one Allen Winch loaned the Security Abstract & Rating Company $2,000, evidenced by three promissory notes, one of $400 and two of $800 respectively, and took a chattel mortgage from the Security Abstract & Rating Company on the property which had been antecedently seized by the writ of attachment. Afterwards Winch renewed the mortgage in October, 1894, and April, 1895, each mortgage containing the same covenants as the first, the goods during all this time being in the undisputed possession of the Abstract Company. Thereafter Nichols bought these notes of Winch and there being a default by the mortgagor in the payment of what was due thereon, Nichols took possession of the books, and removed them to his own office. There had been no foreclosure of the mortgage or attempt to sell thereunder, though the assumption of possession was in accordance with the terms and conditions of the mortgage and rightfully taken. As before stated, the sheriff went to Nichols’s place of business and seized the books, etc. Thereupon Nichols brought replevin, serving his writ by the coroner; the Safe Company defended by the assertion of its title and lien obtained by the levy of the attachment, and a demurrer to the answer setting, up this defense having been overruled, plaintiff replied, and the case went to trial. On the trial the fact and circumstances of the original levy were established by sufficient evidence, and it abundantly appeared that in levying the attachment writ the officer proceeded according to law and assumed the actual custody, control and possession of the property. It was located at the place stated in the return, *52 was in the office of which the sheriff took possession, and there can be no doubt but that the sheriff made a legal levy. He attached to his return no inventory, but the identity of the property was abundantly proven, and what the sheriff afterwards took on the special execution issued on the judgment recovered by the Hosier Safe Company wherein the attachment was sustained, was that on which he had levied under the attachment writ.
This statement sufficiently discloses the question, whether the lien of an attachment acquired by a sufficient levy of a writ, continues after the execution of an undertaking provided for by code sections 111 and 112, and may be enforced against one who subsequently obtains possession of the property by the enforcement of a chattel mortgage executed by the attachment creditor after the levy but subsequent to the giving of the bond, and while he is in possession, where the mortgagee has no knowledge or notice of the levy, other than what is constructively given him by the pendency of the suit and the knowledge afforded by the papers therein and the return of the officer. The question comes in this exact shape, because the record discloses the fact to be that neither Winch nor Nichols had actual notice or knowledge of the making of the levy and the seizure of the goods, and no other than constructive notice that the apparent owner and possessor had no title. We may go further, and say that broadly stated the question is, does the lien of attachment still continue against property delivered to the defendant by the officer after the execution of the bond required by the code ? Does an innocent purchaser or subsequent incumbrancer of such property, take subject to the lien?
On this question an examination of the authorities, either directly in point or bearing upon it in principle, will disclose much conflict. This is not surprising, because attachment being solely a creature of statute, the statutory provisions regulating it are necessarily different to a greater or less extent in all of the states, and in fact in scarcely any are in perfect accord. The question therefore must be considered and *53 determined almost entirely upon the provisions of our own code, applying to them usual and well settled rules of statutory construction, and not losing sight of fixed principles of law, which should control unless it be clearly manifest that it was the legislative intent that they should not. The code sections which control and which require consideration are as follows:
“ See. 111. The defendant may at any time release any property in the hands of the sheriff by virtue of any writ of attachment, by executing an undertaking as provided for in the next section, and all the proceeds of sales and money collected by the sheriff, and all the property attached remaining in his hands, shall be released from the attachment and delivered to the defendant upon the justification of the sureties in the undertaking.
“Sec. 112. Before releasing such attached property, as aforesaid, to the defendant, the sheriff shall require an undertaking executed by the defendant to the plaintiff, and at least two sureties, residents and freeholders, or householders, in this state, to the effect that in case the plaintiff recover judgment in the action, and the attachment is not dissolved, defendant will, on demand, redeliver such attached property so released, to the proper officer, to be applied to the payment of the judgment, and that in default thereof the defendant and sureties will pay to the plaintiff the full value of the property so released. The sheriff may fix the sum for which the undertaking shall be executed, and, if necessary in fixing such sum to know the value of the property released, the same may be appraised by three disinterested persons, to be appointed by the sheriff; and if any sheriff shall release any property held by him under or by virtue of any writ of attachment, without first taking such bond as herein required, or shall take an insufficient bond, he and his sureties shall be liable for. the value of such property so released.”
The language here used is to my judgment clear, unmistakable and unambiguous. In my opinion, there is no doubt-but that it was the intent of the legislature that the bond *54 here required should be substituted as a security for the property itself, and upon the redelivery of the property to the defendant, it was taken without the custody of the law, and became free from the lien of the attachment. It is the duty of a court in construing a statute to give, if possible, force and effect to all of its language, and I cannot see what the words “shall be released from the attachment,” mean, unless it be that it shall be released from the lien of the attachment. If this be not true, the words could have been entirely omitted.
It would have been amply sufficient in such case to have said that the defendant may at any time release the property by executing the undertaking required, and thereupon the property should be delivered to the defendant. By inserting these words, it is manifest that the legislature intended to go further than simply releasing the property from the custody of the sheriff. It is by virtue of the attachment that the lien exists. If there is no attachment, there is no lien. If the attachment fails, or is for any reason discharged, the lien falls. If, therefore, the property be released from the attachment, which is the source and sole creator of the lien, it seems utterly untenable to say that it is not released from that which follows the attachment — which is the consequence of it — namely, the lien.
If there were any doubt about this construction of the .statute, it would, I think, be entirely removed by a-consideration of the nature and objects of attachment, the history of the law in this state, and reference to and analysis of the whole code chapter relating to attachments, and the application to them of rules of statutory construction which are universally recognized.
The bond required by our statute is not in the ordinary acceptation of the term a forthcoming bond. Bouvier defines a forthcoming bond to be “ a bond given for the security of the sheriff, conditioned to produce the property levied on when required.” This was the character of bond under consideration in many of the authorities cited, to the effect that the defendant in such case is simply a custodian of the sher *55 iff, and that the lien of the attachment still continues. Such a bond, as the name indicates and as it was always considered when it originated in the early history of the attachment law,, was simply to secure the return to the officer of the identical property which he had seized under attachment, in the event the attachment was sustained, and the plaintiff should secure judgment. It ran to the sheriff or other officer executing the writ, and in such case it could of course be very reasonably contended that the property still remained in custodia legis ; that the defendant was simply the keeper or receiptor for the sheriff, and that hence, and naturally, the lien still continued. Such was the character of a forthcoming bond allowed in Colorado up to the adoption of the code in 1876, when the sections which we have cited above were adopted. Rev. Stat. 1868, sec. 9, p. 55.
Under our old practice prior to 1876, after seizure of the property, the defendant desiring to release it might give instead of a forthcoming bond what is properly termed a dissolution bond, that is, a bond in sum sufficient to cover the debt-and damages sworn to in behalf of the plaintiff, with all the interest, damages and costs of suit, conditioned that the defendant would pay to the plaintiff the amount of such judgment and costs as might be rendered against him in the suit on a final trial. Upon the giving of this bond, the attachment was entirely dissolved. Revised Statutes, 1868, sec. 29, p. 62. When the code was adopted, however, in 1876, the only bond provided for in order to release attached property either from custody or from the attachment, was that specified in code section 112. This is a bond entirely different from either of the others, but possesses some features common to both, in view of which and under the preceding legislation on attachment bonds and of the expressed language of the code, it seems to me that it was the evident intention of the legislature to substitute it in its effects for both of the old ones. Unlike the old forthcoming bond, it does not run to the sheriff. Like the old dissolution bond, it runs to the plaintiff. If the plaintiff should *56 finally recover judgment, the defendant might surrender the attached property and thereby satisfy the bond. This release from custody alone, however, would not in many cases be sufficient to satisfy the demands of right and justice. It would be unfair to the defendant to require him to give a bond to satisfy the whole judgment, costs and interest which might be recovered against him. before he could have the privilege of releasing the property attached, which might be of much less value than the judgment claimed, both from the custody of the sheriff and the lien of the attachment, so that he could avail himself of all his rights of ownership either by sale or by incumbrance. The code therefore provided in terms, that upon the giving of the bond required, the property attached should be released from the attachment. In many cases the privilege if it extended only to the release of the property from custody would be a barren one,-because as for instance in the case of cattle, or merchandise, or manufactured articles, the sole object for obtaining a release of the goods or property would be that the party might continue the sale of them as in his ordinary course of business. This he could not do if the lien still attached and continued.
If it was the intent of the statute that the lien should still follow the property, why did it provide that upon the giving of the bond, the money which the sheriff might have in his hands arising from the sale of perishable property attached, should be turned over to the defendant? Surely, it could not be expected that any available lien would remain upon the money.
Again, it is the duty of a court in construing a statute, or any part of it, to consider the whole statute, and if possible construe it in such manner as to harmonize its various provisions. This is very frequently one of the most efficient methods by which the intent of the lawmakers can be ascertained.
In section 112 it is provided that the sheriff shall be liable upon his official bond for the sufficiency of the bond which *57 lie takes under the provisions of that section. Thus the whole object of an attachment is attained. The plaintiff is rendered amply secure, to the extent of the property attached, for the collection of any judgment which he may secure.
Again, in section 108 it is provided that after judgment recovered by the plaintiff, the sheriff shall proceed to satisfy the same out of the property’attached by him “which has not been delivered to the defendant or claimant as hereinbefore provided,” etc., showing a clear intent thus far not to preserve the lien of attachment upon the property which has been released; and in section 109 it is provided that if after selling all the property attached by him remaining in his hands, any balance shall remain due, the sheriff shall proceed to collect that balance as upon execution in other cases.
I fully appreciate that it is not within the judicial function to declare laws invalid, simply because in the opinion of the courts, the effects may be bad. This is exclusively a matter for the consideration of the legislature, but in construing a statute where the meaning or language is of doubtful import, it is a well settled rule of construction, founded both upon reason and common sense, that it is proper for courts to consider the results and effects of the statute. It is self-evident that this is one of the best methods of ascertaining the intent of the lawmaking power in such cases. It is not to be presumed that a construction was intended which would bring disastrous consequences when another construction could be given which would bring about beneficent results. Applying this rule in the case at bar, what do we find ? In Colorado, district courts have jurisdiction coextensive with the boundaries of the state. Suit may be instituted and a writ of attachment issued in La Plata county for instance. Personal property may be seized thereunder in Routt county. The defendant gives the required bond and retains possession of the property; he is still clothed by permission of the law with all indicia of ownership; there is nothing of record in Routt county to show that there is any lien whatever upon the property, and a prospective purchaser could not, by the *58 exercise of the most extraordinary diligence, ascertain that there was such a lien. Surely it would not be in accord either with justice, reason or right that a purchaser in such case should lose his property by yirtue of this, to him, unrecorded and secret lien. Again, suppose that a stock of merchandise in the city of Denver should be seized under attachment and a bond immediately given, the sole object of such a bond is that the party may continue his business, may sell his goods, and receive the money, and yet if the doctrine contended for in this case be true, every purchaser of an article of merchandise from such a store is liable to have it taken from him under this lien. I cannot believe that the legislature ever intended to enact a law under which such flagrant injustice could be inflicted upon innocent people. Courts should, and always have gone to the greatest possible length to protect innocent purchasers, and that spirit and principle pervades the statute laws of every state. Even if the express language which I have cited from the concluding portion of section 111 were not used, I would be of the opinion, considering the whole statute, that the intent was not to continue the attachment lien after the giving of this bond, but the use of that language is conclusive in my opinion and settles every doubt beyond peradventure.
It is urged, however, that this question has been settled by our supreme court, and in support of this we are cited to Edwards v. Pomeroy, 8 Colo. 254, and Stevenson v. Palmer, 14 Colo. 564. Not much reliance is placed in the argument upon the first mentioned case because it seems to be conceded that the question involved here was not necessarily involved in that decision. Moreover, what the supreme court did say in its opinion in that case is not in conflict with the views which I have expressed in this. It is said in speaking of the statutory undertaking required by code section 112, “ The design and effect of such instrument is to release the property attached but not to discharge the attachment.” The ,bond in controversy in the case did not at all conform in its conditions to the requirements of the statute, and was claimed to *59 be a dissolution bond because its condition was alleged to be that in case the attachment was not dissolved and discharged, and judgment was recovered, the obligors would pay to the plaintiff the amount of the judgment so recovered, not exceeding, etc. It is evident from the connection in which the language occurs that the court used the word “ discharge ” as synonymous with “ dissolve,” as it most frequently is in the discussion of the law of attachments. Immediately following this, still referring to the statutory undertaking, the court further said: “ The obligation becomes absolute if the attachment be sustained and the plaintiff recover judgment. In such case the property must either be returned to the officer or the value thereof must be paid to the plaintiff.” In all this I fully concur, and nothing which I have said conflicts with it. I simply go further and say what was not necessary to be said in that case because the question did not arise, that if the property has in the mean time passed out of the possession of the defendant into that of an innocent purchaser, then the plaintiff must rely upon the bond to satisfy his judgment.
It is insisted, however, that Stevenson v. Palmer is, in principle, directly in point. If this were the case, of course we would be bound and concluded by it. I cannot, however, view it in that light. That was a case involving an attachment in a justice court, given under the provisions of section 2015, General Statutes. The bond there required was simply by the terms of the statute for the release of the property. There was no provision as in the code that upon its execution the property should be released from the attachment, and there were no other qualifying sections in the law, as in the code, tending to throw any light upon the intent of the legislature in enacting the statute. It was, therefore, not unreasonable to hold, as was done, that the lien of the attachment having once attached to the property, it could not be divested unless there was some language tending to show such an intent. It is true that the court in that case relied largely upon the condition of the bond, that the defendant *60 redeliver the property, holding that this was the primary condition and purpose, although the condition was expressed- in the alternative, and it is also true that precisely such an alternative condition is required in the bond to be given under code section 112, but the same results do not necessarily follow. The language of the code section does not leave the matter open for doubt, but in my opinion clearly indicates the object and purpose of its provisions. It expressly provides that the property shall be released from attachment. The phraseology is widely different from that in the justice’s act, and the other sections of the code to which we have adverted throw still further light upon the intention of the legislature. The supreme court was considering only the case which was before it, and to that extent only are we bound.
The doctrine of stare decisis is invoked, however, and we are told that this court has already decided this question adversely to the views which I have expressed. Schneider v. Wallingford, 4 Colo. App. 150. This doctrine is a highly important one, and necessary to preserve the consistency of judicial determinations of law, and is not to be lightly disregarded or overlooked. That case was a contest between two attaching creditors in the same court, and might turn upon the consideration of other questions and principles not involved in this case. The facts are entirely different from this, and hence I do not feel called upon to discuss it. There the differences between the code provisions relating to attachment, and the law of attachments in justice’s courts were neither raised nor considered. My learned associate who wrote the opinion in the case expressly stated that he relied upon Stevenson v. Palmer as having conclusively settled the question before him. It is true that he said, referring to Stevenson v. Palmer, “ The court holds that the lien cannot be divested by a sale of the property by the attachment defendant,” etc., but it can be readily seen that this was an inadvertence and slip of the pen. That question was not involved in Stevenson v. Palmer, neither was it in Schneider v. *61 Wallingford. It may be said also that it is not involved in the ease at bar, but in my opinion there is no difference whatever in the rights of an innocent purchaser from an attachment defendant and an innocent mortgagee-. There might be a difference between their rights and the rights of a subsequent attaching creditor in the same court, as was the case in Schneider v. Wallingford, but upon this, as I have before intimated, I do not feel called upon to express an opinion until such a case is presented.
In my opinion upon the facts as shown by the pleading and the evidence, plaintiff was entitled to hold the property seized, and hence the judgment herein should be reversed and the cause remanded for further proceedings in accordance with this opinion. Such will be the order.

Reversed.